UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| COURTNEY ELKIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:17-cv-20997 |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | |
| WALTER INVESTMENT MANAGEMENT CORP., DENMAR J. DIXON, GEORGE M. AWAD, ANTHONY N. RENZI, and GARY L. TILLETT, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Courtney Elkin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Walter Investment Management Corp. ("Walter" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly

traded securities of Walter from May 3, 2016 through March 13, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Walter securities at artificially inflated prices during the Class Period and was economically damaged thereby.

7.     Defendant Walter is a diversified mortgage banking firm, which focuses primarily

on the servicing and origination of residential loans in the United States. Walter is incorporated in Maryland and maintains an office for its reverse mortgage business in Houston, Texas. Walter securities trade on the New York Stock Exchange ("NYSE") under the ticker "WAC."

8. Defendant Denmar J. Dixon was the Company's Chairman Chief Executive Officer and President from the beginning of the Class Period until his resignation on June 30, 2016.

9. Defendant George M. Awad ("Awad") was the Company's Chairman Chief Executive Officer and President from June 30, 2016 until

10. Defendant Anthony N. Renzi ("Renzi") has been the Company's Chairman Chief Executive Officer and President since November 15, 2016.

11. Defendant Gary L. Tillett ("Tillett") has been the Company's Executive Vice President and Chief Financial Officer throughout the Class Period.

12. Defendants Renzi and Tillett are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    a. directly participated in the management of the Company;

    b. was directly involved in the day-to-day operations of the Company at the highest levels;

    c. was privy to confidential proprietary information concerning the Company and its business and operations;

    d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

3

e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g. approved or ratified these statements in violation of the federal securities laws.

14. Walter is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Walter under *respondeat superior* and agency principles.

16. Defendants Walter and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Reverse Mortgage Solution Inc. ("RMS") is a subsidiary of the Company.

18. On February 29, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 disclosing that its internal control over financial reporting was effective, stating in part:

**Management's Report on Internal Control Over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). Our internal control system is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.

> Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Projections of any evaluation of effectiveness to future periods are subject to the risks that controls may become inadequate because of changes in conditions or that the degree of compliance with the policies or procedures may deteriorate.
>
> A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.
>
> *Management assessed the effectiveness of our internal control over financial reporting at December 31, 2015. In making this assessment, management used the 2013 criteria set forth by COSO in the Internal Control-Integrated Framework. Based on our assessment and those criteria, management believes that we maintained effective internal control over financial reporting at December 31, 2015.*
>
> The effectiveness of our internal control over financial reporting at December 31, 2015, has been audited by Ernst & Young LLP, an independent registered certified public accounting firm, as stated in their attestation report included in this Annual Report on Form 10-K.

(Emphasis added).

**Materially False and Misleading**
**Statements Issued During the Class Period**

19. On May 3, 2016, the Company filed a Form 10-Q for the quarterly period ended March 31, 2016 (the "1Q16 10-Q") with the SEC. The 1Q16 10-Q was signed by Defendants Dixon and Tillett. Attached to the 1Q16 10-Q were certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendants Dixon and Tillett attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

20. The 1Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

**(b) Changes in Internal Control Over Financial Reporting**

> There were no changes in the Company's internal control over financial reporting that occurred during the quarter ended March 31, 2016 covered by this Quarterly Report on Form 10-Q that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

21.     On August 9, 2016 the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 (the "2Q16 10-Q") with the SEC. The 2Q16 10-Q was signed by Defendants Awad and Tillett. Attached to the 2Q16 10-Q were SOX certifications signed by Defendants Awad and Tillett attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

22.     The 2Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

> **(b) Changes in Internal Control Over Financial Reporting**
>
> There were no changes in the Company's internal control over financial reporting that occurred during the quarter ended June 30, 2016 covered by this Quarterly Report on Form 10-Q that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

23.     On November 9, 2016 the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 (the "3Q16 10-Q") with the SEC. The 3Q16 10-Q was signed by Defendants Renzi and Tillett. Attached to the 3Q16 10-Q were SOX certifications signed by Defendants Renzi and Tillett attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

24.     The 3Q16 10-Q stated the following concerning the Company's internal control over financial reporting:

> **(b) Changes in Internal Control Over Financial Reporting**

There were no changes in the Company's internal control over financial reporting that occurred during the quarter ended September 30, 2016 covered by this Quarterly Report on Form 10-Q that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

25.     The statements contained in ¶¶ 19-24 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had a material weakness in its internal control over financial reporting; and (2) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

26.     On March 14, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 revealing a material weakness in its internal control over financial reporting, stating in part:

> ***We identified a material weakness in our internal controls over financial reporting. If we do not adequately address this material weakness, if we have other material weaknesses or significant deficiencies in our internal controls over financial reporting in the future, or if we otherwise do not maintain effective internal controls over financial reporting, we could fail to accurately report our financial results, which may materially adversely affect our business and financial condition.***
> Section 404 of the Sarbanes-Oxley Act of 2002 requires us to evaluate and report on our internal controls over financial reporting and have our independent auditors issue their own opinion on our internal controls over financial reporting. Effective internal controls are necessary for us to provide reliable financial reports and effectively prevent fraud. A material weakness is defined by the standards issued by the Public Company Accounting Oversight Board as a deficiency or a combination of deficiencies in internal controls over financial reporting such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

For the year ended December 31, 2016, we concluded there was a material weakness in internal controls over financial reporting related to operational processes associated with Ditech Financial default servicing activities. We have initiated steps to remediate this material weakness. While we believe these steps will improve the effectiveness of our internal controls over financial reporting and remediate the material weakness, if our remediation efforts are insufficient to address the material weakness, or if additional material weaknesses in our internal controls are discovered in the future, they may adversely affect our ability to record, process, summarize and report financial information timely and accurately and, as a result, our financial statements may contain material misstatements or omissions. Refer to Part II. Item 9A. Controls and Procedures for further information regarding this material weakness and our related remediation efforts.

It is possible that additional material weaknesses and/or significant deficiencies could be identified by our management or by our independent auditing firm in the future, or may occur without being identified. The existence of any material weakness or significant deficiency could require management to devote significant time and incur significant expense to remediate such weakness or deficiency and management may not be able to remediate the same in a timely manner. Any such weakness or deficiency, even if remediated quickly, could result in regulatory scrutiny or lead to a default under our indebtedness. Furthermore, any material weakness requiring disclosure could cause investors to lose confidence in our reported financial condition, materially affect the market price and trading liquidity of our debt instruments, reduce the market value of our common stock and otherwise materially adversely affect our business and financial condition.

27. On this news, the Company's shares fell $1.05 per share or over 38% to close at $1.65 per share on March 14, 2017, damaging investors.

28. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Walter securities publicly traded on NYSE during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are

8

Defendants, the officers and directors of Walter, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Walter securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.     whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Walter;

      c.     whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.     whether the Defendants caused the Company to issue false and misleading SEC filings during the Class Period;

      e.     whether Defendants acted knowingly or recklessly in issuing false and SEC filing

      f.     whether the prices of Walter's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

      g.     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

      a.     Walter securities met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

      b.     As a public issuer, the Company filed periodic public reports with the SEC and NYSE;

   c. The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

   d. The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

  36. Based on the foregoing, the market for Walter securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

  37. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

  38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

  39. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Walter securities during the Class Period.

42. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Walter, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

43. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material

statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

44. As a result of the foregoing, the market price of Walter securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Walter securities during the Class Period in purchasing Walter securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

45. Had Plaintiff and the other members of the Class been aware that the market price of Walter securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Walter securities at the artificially inflated prices that they did, or at all.

46. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Walter securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Walter's misstatement of revenue and profit and false financial statements.

50.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

51.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Walter securities.

52.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by The Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of he Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 16, 2017                         Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence Rosen, Esq.
Fla. Bar No. 0182877
Email: lrosen@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, NY  10116
Phone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiff*